UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ERIC M. GORE,<br><br>                *Defendant*. | Civil Action No.:<br>3:10-cr-00250-PGS-1<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on Defendant Eric M. Gore's ("Defendant") motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  (ECF Nos. 36, 39). Defendant is currently housed at FCI Loretto and is serving the remaining few years of his 188-month federal prison sentence.  Defendant contends that the Court should order his immediate release from prison because the grave threat that the novel coronavirus ("COVID-19") poses at FCI Loretto, coupled with his chronic respiratory conditions and related health factors, place him at an elevated risk of severe illness and/or death if he contracts the virus.  Defendant also asserts that he has been rehabilitated and would pose a low security risk to his community if released.

      The Government opposes Defendant's motion, maintaining that Defendant is a generally healthy individual and would present a danger to the safety of the community if released.  Oral argument was held on June 30, 2020.  For the reasons stated below, Defendant's motion is denied without prejudice.

I.

      By way of background, Defendant's conviction stems from his role in a drug trafficking ring in and around Trenton, New Jersey, between October 2008 and April 2009.

On April 12, 2010, Defendant entered into a plea agreement in which he pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841 and 846. (*See* Plea Agreement, p. 1, ECF No. 29). In the Plea Agreement, the parties stipulated that Defendant was a leader of the drug trafficking organization, and the offense involved at least one but less than three kilograms of heroin. (Schedule A, Plea Agreement ¶¶ 3, 5). At the time he pleaded guilty, Defendant demonstrated contrition for his actions and accepted responsibility for the offense charged. (*Id.* ¶ 6).

On February 1, 2011, Judge Mary L. Cooper, U.S.D.J.[1], sentenced Defendant to 188 months in prison to be followed by a term of 5 years of supervised release. (Judgment, p. 2-3, ECF No. 33). Defendant was deemed a "career offender" at the time of sentencing because he had previously been convicted of several drug-related crimes in New Jersey state court. *See* Presentence Investigation Report ("PSR"). Defendant was serving probation for a state court conviction of possession of a controlled substance when he was arrested for the underlying offense at issue here, thereby violating his probation. PSR ¶ 62, 64.

Despite these facts, Judge Cooper departed downward from the sentencing guideline range, noting that Defendant had expressed remorse for his actions and had taken affirmative steps to improve himself, such as earn a GED while in pre-trial detention. (*See* Def.'s Moving Br. 2, ECF No. 39). Judge Cooper also imposed various conditions of release, including alcohol and drug testing and treatment as well as a prohibition on gang and criminal affiliations. (Judgment, pp. 3-5).

---

[1] Section 3582 requires compassionate release motions to be addressed to the sentencing court. *See* 18 U.S.C. § 3582(c). In this case, Judge Cooper was the District Court Judge who sentenced Defendant, but Judge Cooper is retired and on inactive status. Therefore, all further proceedings in this case have been reassigned to me. *See* Docket, Crim. Action No. 10-cr-00250-PGS-1.

Defendant began serving his sentence in March 2009[2]; his projected release date is January 12, 2023. (Def.'s Moving Br. 2). Thus, to date, Defendant has served slightly over 70% of his sentence. (*Id.*). On April 28, 2020, the Bureau of Prisons ("BOP"), through FCI Loretto's Warden, denied Defendant's administrative request for compassionate release after finding that Defendant was generally healthy, both physically and mentally, and therefore ineligible for compassionate release. (BOP Compassionate Release Denial, Apr. 28, 2020, Ex. A to Government Opp'n Br., ECF No. 43-1). Defendant filed his present motion for compassionate release shortly thereafter.

Defendant, who is 38 years old, claims that his asthma and bronchitis, along with his race, sex, and obesity, increase the risk of serious medical complications should he contract COVID-19. Defendant also alleges that he does not pose a threat to the community.

## II.

Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Weatherspoon*, 696 F.3d 416, 420 (3d Cir. 2012).

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) and permits a criminal defendant to request a reduction in sentence, also known as "compassionate release," for "extraordinary and compelling reasons" after exhausting administrative remedies. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Alexander*, Crim. Action No.: 19-32 (FLW), 2020 U.S. Dist. LEXIS 85609, at *5 (D.N.J. May 15, 2020). Before a defendant can bring a motion for reduced sentence on his own behalf directly with the district court, a defendant "must ask the Bureau of Prisons . . . to do so on

---

[2] Defendant was sentenced in February 2011, but was credited with time served for the time he spent in pre-trial detention. (*See* Government Opp'n Br. 4, ECF No. 43).

3

[his] behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (citing § 3582(c)(1)(A)).

If a motion is timely filed by the defendant, then a court may reduce an inmate's sentence if (1) it finds that there are "extraordinary and compelling reasons" that warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission" as well as the Court's independent assessment; and (3) it considers the sentencing factors set forth in § 3553(a), as applicable. 18 U.S.C. § 3852(c)(1)(A); *see United States v. Brown*, Crim. Nos. 07-890; 07-19 (RBK), 2020 U.S. Dist. LEXIS 84223, at *5 (D.N.J. May 13, 2020).

As such, a defendant seeking a reduction in his sentence under the First Step Act "bears the burden" of proving that he has (1) exhausted administrative remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Sellers*, Crim. No. 10-434 (RMB), 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

III.

In this case, Defendant has failed to demonstrate that extraordinary and compelling reasons exist that would warrant his release from FCI Loretto.

At the outset, the parties agree that Defendant has successfully exhausted his administrative remedies. Therefore, the Court will address the merits of Defendant's motion, beginning with the arguments related to his medical conditions.

Congress did not define the term "compelling and extraordinary reasons," but instead directed the U.S. Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Although the Sentencing Commission has not updated

its Policy Statement since the passage of the First Step Act in 2018, the Commission's Policy Statement still provides useful guidance for district courts in identifying extraordinary and compelling reasons for a defendant's eligibility for compassionate release. *See Alexander*, 2020 U.S. Dist. LEXIS 85609, at *6-7; *United States v. Rodriguez*, Criminal Action No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718, at *9-10 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018).

The Sentencing Commission's Policy Statement provides that a defendant may demonstrate extraordinary and compelling circumstances for compassionate release based on the medical condition of the defendant; the age of the defendant; the defendant's family circumstances; or for "other reasons." U.S.S.G. § 1B1.13, Application Note 1. Relevant to Defendant's motion in the present case, a defendant may show extraordinary and compelling reasons for release based on a medical condition where (1) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," or (2) he is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious function or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at 1(A).

Here, Defendant's argument is based on his assertion that his chronic respiratory ailments constitute "serious physical or medical condition[s]" that cannot be addressed adequately at FCI Loretto. *See id.* at 1(A)(ii)(I). Specifically, Defendant indicates that he suffers from asthma and bronchitis—conditions from which he has suffered before his imprisonment—and that these pre-existing respiratory conditions render him particularly vulnerable to medical complications if he

contracts COVID-19[3]. (*See* Def.'s Moving Br. 3). In support of his argument, Defendant cites to an online information page created by the Centers for Disease Control and Prevention (CDC) which states that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."[4] (*Id.* at 7).

Furthermore, Defendant argues that in conjunction with his asthma and bronchitis, his risk of exposure to COVID-19 is especially high considering the prison conditions at FCI Loretto. Defendant admits that, when he filed his motion, FCI Loretto had no confirmed cases of the virus among the inmate population and prison staff. (Def.'s Moving Br. 10). Nevertheless, Defendant maintains that "it is only a matter of time" before COVID-19 enters and spreads in FCI Loretto, since the virus has permeated numerous federal prisons across the country. (*Id.*). Defendant also claims that the health precautions that the BOP has undertaken to prevent the spread of the virus throughout federal prisons have been unsuccessful, generally speaking, in containing the virus, as many inmates and prison staff members in various prisons have tested positive for the virus[5].

In opposition, the Government acknowledges that Defendant suffers from asthma, but undercuts the severity of his asthma condition. The Government points out that Defendant has been diagnosed with Step 1 asthma, which, according to Defendant's medical records dated June 1, 2019 to June 1, 2020, is a "mild intermittent" type of asthma. (*See* Gore Medical Reports, Ex.

---

[3] Since, by now, COVID-19 is generally familiar to most, a synopsis of the COVID-19 pandemic is unnecessary.

[4] CDC, *People with Moderate to Severe Asthma*, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited July 7, 2020).

[5] *See* Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited July 7, 2020).

B to Government's Opp'n Br.).  Thus, the Government avers that Defendant's asthma is minor and generally controllable through the use of Defendant's albuterol inhaler; hence, Defendant's asthma is distinguishable from the "*moderate to severe*" asthma the CDC has warned can cause serious complications if one contracts COVID-19[6].  Also, the Government questions whether Defendant currently suffers from bronchitis, because although the PSR, which was prepared in 2010, indicates that Defendant suffers from bronchitis during the winter months, (*see* PSR ¶¶ 87), Defendant's medical records within the past year do not mention a bronchitis diagnosis, (*see* Gore Medical Reports).

    Moreover, the Government submitted a Declaration by FCI Loretto's Health Services Administrator which sets forth the practices and procedures the prison has employed to avert the spread of COVID-19.  (Declaration of Norman Weidlich, Health Services Administrator, FCI Loretto ("Weidlich Decl."), Ex. C to Government's Opp'n Br., ECF No. 43-2).  Examples of precautions FCI has implemented include the following: all staff entering the facility are screened for symptoms and have their temperatures taken prior to admittance into the facility; all staff are required to wear surgical or facial masks; inmate internal movement has been limited to maximize social distancing; all social visits have been suspended; symptomatic inmates are tested for the virus while asymptomatic inmates with exposure risk factors are quarantined; and soap is widely available to both staff and inmates.  (*Id.*).  Accordingly, the Government maintains that the nature of Defendant's asthma and alleged bronchitis, the absence of any confirmed cases of COVID-19 at FCI Loretto, and the various health precautions the prison has undertaken prove that Defendant should not be released from prison.

---

[6] *See* p.6, n.4, *supra* (emphasis added).

In response, Defendant argues that his medical records also evince that his obesity, sex (male), and race (African American) are additional factors that raise his vulnerability to complications should he contract the virus. (*See generally* Def.'s Reply Br., ECF No. 44). Defendant concedes that FCI Loretto's COVID-19 practices and procedures comply with CDC guidelines; yet, Defendant posits that the prison's health measures are inadequate because they do not protect him from being infected by an asymptomatic or pre-symptomatic individual in the prison, nor does FCI Loretto have a plan to protect vulnerable inmates like him. (*Id.* at 16-17).

Here, both the COVID-related care being offered at FCI Loretto and Defendant's medical conditions fail to demonstrate that compassionate release is necessary. Defendant attempts to undermine the myriad health initiatives that FCI Loretto has implemented thus far by suggesting that the prison must employ universal testing of inmates and prison staff. Yet, as Defendant himself admits, FCI Loretto's COVID-19 protocols conform to the CDC's guidelines for management of the virus in correctional and detention facilities[7]. (Def.'s Reply Br. 16). CDC's guidelines do not require global testing of inmates; instead, the CDC describes certain practices that correctional facilities should administer to prevent and manage the virus, which sometimes includes testing and quarantining of symptomatic individuals as well as quarantining of asymptomatic individuals[8]. As evidenced in the Health Services Administrator's Declaration, FCI Loretto has adopted many of the CDC-recommended practices and procedures to curtail the spread of the virus. (*See* Weidlich Decl.). Thus, Defendant's argument falls short in this respect.

---

[7] *See* CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited July 7, 2020).

[8] *Id.*

Moreover, based on Defendant's recent medical records, his asthma appears to be relatively mild and has been manageable throughout his tenure at the prison. For example, entries from Defendant's medical records indicate that Defendant is not required to use his albuterol inhaler daily; that he uses his inhaler "appropriately;" and that his asthma "does not interfere with his activity level." (Gore Medical Reports). Furthermore, while Defendant's asthma is well documented by recent medical reports, Defendant's bronchitis is not, thereby weakening Defendant's allegations of bronchitis. Even if Defendant suffers from bronchitis, Defendant has failed to submit evidence to show that he has been unable to manage his bronchitis any differently than he has managed his asthma.

In addition, Defendant is fairly young in age (37 years old), which further suggests that he is not in a high risk group to contract COVID-19, and Defendant does not allege that he has contracted COVID-19. Defendant also asserts that his obesity, gender, and race, render him particularly susceptible to medical complications if he contracted the virus. These arguments, however, merit little weight because, once again, Defendant does not present evidence which would substantiate his claim that the prison has failed to provide him adequate care based on these additional factors. Accordingly, Defendant has not shown that his claimed medical conditions substantially diminish his ability to provide self-care at FCI Loretto.

Lastly, Defendant relies on a case from the Eastern District of Michigan. In that case, the Defendant was housed at FCI Loretto and was granted compassionate release. United States v. Amarrah, No. 17-20464, 2020 U.S. Dist. LEXIS 80396 (E.D. Mich. May 7, 2020). Amarrah, however, is distinguishable from the present case because the defendant in that case suffered from numerous debilitating ailments; the defendant had been convicted of health care fraud and was thus not perceived to be a danger to the community; and court in that case found that FCI Loretto's

COVID-19 testing regimen was insufficient. *Amarrah*, 2020 U.S. Dist. LEXIS 80396, at *11-23. In this case, Defendant's medical ailments are vastly different in kind and severity to the Amarrah defendant; the nature of defendant's convictions differ, as further explained below; and, as discussed, FCI Loretto has complied with many of the CDC guidelines for management and testing of the virus.

In sum, it is doubtful whether Defendant is materially more vulnerable to the effects of COVID-19 than other inmates. The Court understands and is sympathetic to Defendant's fears about his health while in prison as well as the rapidly evolving nature of COVID-19. Still, as the U.S. Court of Appeals for the Third Circuit recently explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. As such, Defendant has failed to demonstrate that his medical concerns rise to the level of extraordinary and compelling reasons that would justify his compassionate release from prison.

IV.

Next, the Court considers whether Defendant would pose a threat to the safety of his community if released. Overall, the evidence shows that Defendant has not been completely rehabilitated, which further warrants the denial of his release from prison.

After considering the factors set forth in 18 U.S.C. § 3553(a), a district court may order the compassionate release of a defendant if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[9]." U.S.S.G. § 1B1.13. The following factors are particularly relevant in this case: "(1) the nature and circumstances of the

---

[9] The § 3142(g) factors are substantially similar to the factors set forth in § 3553(a).

10

offense and the history and characteristics of the defendant"; and (2) "the need for the sentence imposed," which includes, inter alia, a sentence that justifiably "reflects the seriousness of the offense," that "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1) and (2).

In this case, Defendant states that he has taken responsibility for his previous actions and alleges that, if released, he would be able to acclimate seamlessly into society because he will have a stable home to live in and sufficient family support.  Defendant also indicates that he has developed various work-related skills, such as carpentry, accountant, and electrician skills, which would help him obtain gainful employment if released.

While this may be true, Defendant has been deemed a career offender and was convicted in New Jersey state court for several drug-related crimes similar to the underlying offense of which he was convicted here.  In fact, Defendant was on probation for a previous drug-related offense when he was arrested and subsequently convicted for the drug trafficking offense at issue here.  In addition, Defendant was sanctioned for two drug-related infractions while in prison: one in 2019 for marijuana possession, and another in 2015 where Defendant tested positive for marijuana.  (*See* Gore Inmate Discipline Data, Ex. D to Government's Opp'n Br., ECF No. 43-3).  This history raises serious doubts about Defendant's ability to conform his actions to the requirements of the law, which therefore suggests that Defendant may pose a danger to the community if released.

In reviewing the Defendant's medical records, he has severe cannabis and alcohol addictions.  There were concerns raised that drug rehabilitation services may be unavailable to Defendant if he remains at Loretto for two reasons.  First, Gore has been accepted to the BOP's Residential Drug Abuse Program (RDAP), but due to the COVID-19 quarantine, he cannot be transferred to a facility that administers an RDAP program.  Secondly, since Gore's anticipated

11

time of incarceration is drawing to a close, he may not have sufficient time to complete RDAP. As a result, Defendant argues that compassionate release may afford more expeditious treatment. Despite the contentions set forth by Defendant, it is speculative to accept those contentions as true without some supporting evidence.  In addition, BOP has other drug rehabilitation treatment which may be available at Loretto; but no evidence of alternative programs has been submitted.  It is speculative for the Court to assume that no other drug rehabilitation treatment is  available.   The Court acknowledges Defendant's efforts to rehabilitate himself; however, the assertion that Gore may be unable to undertake the RDAP program without any supporting evidence is insufficient to overcome the high standard to show extraordinary and compelling circumstances.

V.

As such, the Court denies Defendant's motion for compassionate release.  This denial will be without prejudice if Defendant experiences a substantial deterioration in health or in the event that a significant change in the health conditions at FCI Loretto occurs.

**ORDER**

This matter, having come before the Court on Defendant's Motion for a Reduction in Sentence/Compassionate Release (ECF Nos. 36, 39), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 13th day of July, 2020,

**ORDERED** that Defendant's Motion for a Reduction in Sentence/Compassionate Release (ECF Nos. 36, 39) is **DENIED WITHOUT PREJUDICE**.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.